IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-659-D

| | | |
|---|---|---|
| WESTDALE RECAP PROPERTIES, LTD. ) | | |
| and WESTDALE WAKEFIELD NC, L.P., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | **ORDER** |
| ) | | |
| NP/I&G WAKEFIELD COMMONS, L.L.C., ) | | |
| and CENTRO NP, L.L.C. n/k/a BRIXMOR, ) | | |
| L.L.C., ) | | |
| ) | | |
| Defendants. ) | | |

This case comes before the court on a motion (D.E. 38) by plaintiffs Westdale RECap Properties, Ltd. and Westdale Wakefield NC, L.P. (collectively "plaintiffs") to compel defendant Centro NP, L.L.C. n/k/a Brixmor, L.L.C. ("Centro") to respond further to their requests for production of documents. The motion has been fully briefed[1] and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* D.E. 45). For the reasons set forth below, the motion will be allowed in part and denied in part.

## BACKGROUND

**I.     Plaintiffs' Claims**

According to the complaint, plaintiffs entered into a contract for the purchase of the Wakefield Commons shopping center from defendant NP/I&G Wakefield Commons, L.L.C.

---

[1] In support of their motion to compel, plaintiffs filed a memorandum (D.E. 40) with exhibits (D.E. 40-1 through 40-14). Centro filed a memorandum (D.E. 43) with exhibits (D.E. 43-1 through 43-10) in opposition. Centro filed a supplemental memorandum (D.E. 48) with an exhibit (D.E. 48-1), and plaintiffs were permitted to file a response memorandum (D.E. 53-1). Centro was permitted to file a reply (D.E. 56-1) to plaintiffs' response memorandum. The court issued an Order (D.E. 57) on 13 May 2013 directing the parties to file a joint status report indicating whether the issues raised in plaintiffs' motion to compel had been resolved. The joint status report (D.E. 58) was filed on 21 May 2013. Thereafter, plaintiffs were permitted to file a surreply (D.E. 60-1) and Centro a response (D.E. 64-2) to plaintiffs' surreply.

("Wakefield Commons") in July of 2010. (Comp. (D.E. 5) ¶ 8). The sale closed on 4 May 2011. (*Id.* ¶ 19). Centro was the property manager and an agent and partial owner of Wakefield Commons. (*Id.* ¶¶ 4, 14). The anchor tenant at the shopping center had been having serious financial difficulty since before entry into the contract, and Centro knew of it. (*Id.* ¶¶ 22-26). Plaintiffs contend that through omissions and affirmative statements defendants misrepresented to them the financial condition of the anchor tenant. (*Id.* ¶¶ 21, 30-31). Only five days after the sale closed, the tenant gave notice to plaintiffs that it was closing. (*Id.* ¶ 20). In their complaint, plaintiffs assert claims for fraud (*id.* ¶¶ 29-34), civil conspiracy (*id.* ¶¶ 35-39), unfair and deceptive trade practices (*id.* ¶¶ 45-48), negligent misrepresentation (*id.* ¶¶ 49-54), and punitive damages (*id.* ¶¶ 55-58) against both defendants, and a claim for breach of the covenant of good faith and fair dealing against Wakefield Commons (*id.* ¶¶ 40-44). In addition to punitive damages, plaintiffs seek compensatory damages, statutory treble damages, costs, and attorneys' fees. (*Id.*, prayer for relief). Wakefield Commons and Centro filed answers (D.E. 15, 17) generally denying plaintiffs' allegations.

## II. Discovery Proceedings

On 3 April 2012, the court entered a Scheduling Order (D.E. 27), which approved the parties' 2 March 2012 proposed Joint Rule 26(f) Report ("Discovery Plan") (D.E. 25). The Discovery Plan provided that documents containing confidential information would be treated as set out in a protective order to be negotiated by the parties. (Discovery Plan ¶ 3.d; *see also* Jones Dec. (D.E. 43-3) ¶¶ 2, 3). The Discovery Plan also provided that counsel would work together to develop a protocol for the production of electronically stored information ("ESI") so that "the documents will be accessible and usable by the receiving party." (Discovery Plan ¶ 3.c; *see also*

2

Jones Dec. ¶¶ 2, 3). Although, as detailed below, the parties did eventually agree on a protective order, they have exchanged proposed ESI protocols (D.E. 43-4 (pls.), 43-5 (defs.)) without reaching agreement on one.

On 31 May 2012, plaintiffs served on Centro their requests for production of documents (D.E. 40-2). Centro moved (*see* D.E. 30) for an extension until 4 August 2012 in which to respond, but the court permitted an extension until only 25 July 2012 (*see* D.E. 32; *see also* D.E. 40-3 (email confirming plaintiff's consent to extension until 25 July 2012)). Centro served its response (D.E. 40-4) 11 days late, on 6 August 2012.

Centro gave the same response to each of the 71 production requests, consisting of one sentence asserting a series of objections and another sentence stating that, subject to the various objections, relevant, nonprivileged documents would be produced. (*See generally* Resp. to Prod. Reqs. 5-36). The response also included a separate set of general objections, broken into 18 paragraphs. (*Id.* at 1-5). There are no objections specifically tailored to individual production requests.

All the requests but one (Prod. Req. No. 69, seeking Centro's trial exhibits) asked that ESI be produced in its "native format."[2] (*See, e.g.*, Prod. Req. No. 1). Centro did not address in its stock response the form of production of ESI. In its general objections, however, Centro objected to the extent that the requests seek the production of documents in any particular electronic format (Resp. to Prod. Reqs., Gen. Objs. ¶ 10) or seek ESI not reasonably accessible because of undue

---

[2] While "native format" is not defined in the production requests, both sides' proposed ESI protocols define "Native File" as: "an ESI item in the electronic format of the application in which such ESI was created, viewed, and/or modified. Native Files are a subset of ESI." (Pls.' Proposed ESI Protocol ¶ B.2.c.; Defs.' Proposed ESI Protocol ¶ B.2.c.). This meaning is consistent with that typically ascribed to "native format." *See, e.g., Cenveo Corp. v. Southern Graphic Sys.*, Civ. No. 08-5521 (JRT/AJB), 2009 WL 4042898, at *1 (D. Minn. 18 Nov. 2009) (collecting authorities).

burden or cost, or in more than one form (*id.*, Gen. Objs. ¶ 12).  Centro continued that any ESI would be produced in paper printout form or in electronic format as kept and maintained by Centro in the ordinary course of business.  (*Id.*).

Centro produced no documents with the response.  Nor did it then, or at any time since, provide a privilege log.

On 14 August 2012, eight days after Centro served its response, plaintiffs filed a consent motion for a protective order (D.E. 33).  The court entered a protective order on 17 September 2012 (D.E. 35) based on the consent proposal, which was recently amended (*see* D.E. 75).

On 27 September 2012, ten days after entry of the initial protective order, Centro produced approximately 500 pages of documents.  (Mot. ¶ 8).  It supplemented its production on 19 October 2012 with an additional 120 pages of documents.  (*Id.*).  After the parties were unable to resolve their remaining differences about Centro's production, plaintiffs filed the instant motion on 19 December 2012, which, as indicated in footnote 1, has been the subject of multiple rounds of briefing.  (*Id.* ¶ 10).  On 9 April 2013, Centro again supplemented its production with more than 24,000 pages of documents in PDF format by using search terms plaintiffs agreed to with Wakefield Commons.  (*See* Centro's Supp. Mem. (D.E. 48) 1; 28 Feb. 2013 Ltr. (D.E. 48-1)).

### III. Grounds for Plaintiffs' Motion

Nonetheless, plaintiffs continue to contend that Centro's response and production are inadequate.  Plaintiffs assert four main challenges:  that Centro waived all of its objections to the requests by not responding to them timely; that it also waived its objections by asserting stock, nonparticularlized objections; that it should be required to produce the purportedly outstanding ESI in its native format; and that Centro improperly failed to produce a privilege log for withheld

4

documents.

## APPLICABLE LEGAL STANDARDS

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 Jun. 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). The party resisting discovery bears the burden of establishing the legitimacy of its objections. *Brey Corp. v. LQ Mgmt., L.L.C.*, No. AW-11-cv-00718-AW, 2012 WL 3127023, at *4 (D. Md. 26 Jul. 2012) ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be granted.'" (quoting *Clere v. GC Servs., L.P.*, No. 3:10-cv-00795, 2011 WL 2181176, at *2 (S.D. W. Va. 2011))). In

5

addition, the court may limit the extent of discovery otherwise allowable where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC,* No. WDQ-11-2478, 2013 WL 1622001, at *3 (D. Md. 9 Apr. 2013) ("Further, '[a]ll discovery is subject to the [proportionality] limitations imposed by Rule 26(b)(2)(C).'" (quoting Fed. R. Civ. P. 26(b)(1))).

With respect to ESI specifically, Rule 26 provides that a party "need not provide discovery of [ESI] from sources that the party identifies as not reasonably accessible because of undue burden or cost," but has the burden of demonstrating such inaccessibility on a motion to compel or for a protective order. Fed. R. Civ. P. 26(b)(2)(B). The withheld ESI is still producible if the requesting party shows good cause. *Id.*

Rule 34 controls requests for production of documents. *See generally* Fed. R. Civ. P. 34. A party asserting an objection to a particular request "must specify the part [to which it objects] and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). If a party objects to a requested form of ESI, it must state the form it intends to use. *Id.* (b)(2)(D). Unlike Rule 33, which pertains to interrogatories, Rule 34 does not expressly provide that failure to object timely constitutes a waiver of said objections. *See* Fed. R. Civ. P. 33(b)(4). Courts have nevertheless generally held that to be the case absent extraordinary circumstances. *Wilhelm v. Cain*, No. 3:10-cv-109, 2011 WL 128568, at *4 (N.D. W.Va 14 Jan. 2011) ("As a general rule, untimely objections to discovery requests are waived."); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270

6

F.R.D. 238, 240 (E.D.N.C. 2010) (noting that the Advisory Committee notes to Rule 34 state that "[t]he procedure provided in Rule 34 is essentially the same as that in Rule 33"); *Cappetta v. GC Servs. Ltd. Pship*, No. 3:08CV288, 2008 WL 5377934, at *4 (E.D. Va. 24 Dec. 2008) ("Where a party has taken no precautions to properly assert the privilege, and has allowed time to pass without clarifying the basis for its assertion of privilege, waiver of the privilege may be an appropriate sanction.")

In addition, where the objection asserted is one of privilege, a party must expressly assert it in response to the particular discovery request involved and serve with its discovery responses a privilege log in conformance with Fed. R. Civ. P. 26(b)(5)(A). Failure to timely serve a privilege log meeting the requirements of Rule 26(b)(5)(A) may be deemed a waiver of the privilege otherwise claimed. *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 577 (D. Md. 2010) ("Absent consent of the adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege.").

Rule 37 allows for the filing of a motion to compel discovery responses. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv).

## ANALYSIS

**I.  Waiver by Tardiness**

As noted, Centro served its discovery responses almost two weeks after its permitted extension and has been slow in producing requested documents. This delay alone could constitute a waiver of any valid objections. *See Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md.

2005) (listing factors to be considered in determining whether waiver should be found).

The court declines to find a waiver here. Centro explains that the tardiness in serving the response was not willful, but resulted from its counsel's erroneously docketing the deadline for the response based on the one he had requested (*i.e.*, 4 August 2012, a Saturday, making the actual proposed deadline Monday, 6 August 2012, when Centro did serve its response), rather than the one imposed by the court, 25 July 2012. (*See* Jones Dec. ¶ 9). As to the document production, the delay in production of responsive documents resulted, in part, from the time required for entry of a protective order. More fundamentally, though, Centro argues convincingly that it has been awaiting agreement on a protocol for ESI, as contemplated in the discovery plan, and proposed search terms from plaintiffs to conduct a supplemental search of ESI pursuant to such a protocol. Both sides' proposals for an ESI protocol contain identical provisions providing for supplementation based on search terms to be provided by the requesting party. (*See* Pls.' Proposed ESI Protocol ¶ B.3.f(i); Defs.' Proposed ESI Protocol ¶ B.3.f(i)).

In addition, plaintiffs have not demonstrated any prejudice from the delay in service of the response or requested documents, particularly in light of the overall pace of discovery in this case. For this and the other reasons discussed, the court finds that a determination of waiver based on tardiness would be unduly harsh and is not warranted.

**II.     Waiver by Generalized Nature of Objections**

The court also declines to find waiver based on Centro's assertion of boilerplate objections. Reliance on general objections can, of course, serve to waive specific objections. *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.,* No. 6:12–cv–00023, 2013 WL 3660562, at *2 (W.D. Va. 11 Jul. 2013) (noting that assertion of "generalized, boilerplate objections" is disfavored in this Circuit and often

results in waiver of particularized objections); *Paulino v. Dollar Gen. Corp.,* No. 3:12–CV–75, 2013 WL 1773892, at *12 (N.D. W. Va. 25 Apr. 2013) (finding that provision of Rule 33 providing that reliance on general objections can result in waiver of specific objections applies to document production requests as well).

Here, however, Centro has not been relying on these stock objections, but, as discussed, has withheld further production because of the absence of agreement on an ESI protocol and proposed search terms from plaintiffs pursuant to such a protocol. Indeed, once Centro learned of the search terms plaintiffs agreed to with respect to discovery requests to Wakefield Commons, it voluntarily conducted a supplemental search using those terms and produced over 20,000 additional documents to plaintiffs. As with Centro's tardiness, plaintiffs have failed to show that its assertion of generalized objections merits the severe consequence of waiver.[3]

### III. Production of Purportedly Outstanding ESI

Plaintiffs contend that Centro has not yet produced all ESI responsive to its production requests. Centro, in turn, has indicated its willingness to conduct a search for additional responsive ESI based on search terms plaintiffs provide it.

As noted, the proposed ESI protocols of both sides provide for supplemental searches for ESI by the producing party based on search terms from the receiving party:

> [A] receiving party, upon good cause shown, may request that the producing party conduct one or more supplemental searches and production using different custodians, dates, and/or keyword search terms. The receiving party's request for a supplemental search may include ESI (including specific documents) that would

---

[3] The court understands the additional production in dispute to be ESI. To the extent that it includes any non-ESI documents, the lack of specificity of Centro's objections can find no justification in the parties' agreement that an ESI protocol would govern production. Therefore, as to any non-ESI documents requested, the court finds that Centro has not supported its objections as set forth in its response, and the court overrules them, except objections grounded on privilege. Centro shall produce to plaintiffs by 16 October 2013 any non-ESI documents withheld on grounds other than privilege.

9

Case 5:11-cv-00659-BO   Document 78   Filed 09/26/13   Page 9 of 13

not necessarily have been captured by the initial searches. If the producing party objects to the supplemental search for any reason, including objections that the receiving party has failed to show good cause for the requested supplemental search or that the expense of conducting the search and reviewing its results is excessive, the requesting party may seek relief from the Court.

(Pls.' Proposed ESI Protocol ¶ B.3.f(i); Defs.' Proposed ESI Protocol ¶ B.3.f(i)). While this provision is not binding, the court believes it provides an appropriate means of resolving the instant dispute.

Therefore, pursuant to it, the court finds that plaintiffs have shown good cause to request that Centro conduct supplemental searches and production. Plaintiffs shall provide Centro by 4 October 2013 different custodians, dates and/or keyword search terms. Centro shall produce by 16 October 2013 all documents responsive to the search terms as to which it asserts no objection. In the event Centro does have any objections, it shall serve them on plaintiffs by the same date. Centro may not rely on generalized objections, but must state any objections with specificity or the objections may be deemed waived. The parties shall confer in good faith to resolve any objections asserted by Centro. Centro shall produce all documents as to which the objections are resolved by 25 October 2013. As to any unresolved objections, Centro shall file a motion for relief by the same date. The motion shall include the certification of good faith conferral required by Rule 37(a)(1) and Local Civil Rule 7.1(c), E.D.N.C.

As to the format of the production, plaintiffs contend that they require all ESI production be in its native format, rather than searchable PDF's, so that metadata[4] will not be destroyed.

---

[4] The proposed ESI protocols define "Metadata" as:

> (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information within the Native File generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

10

They argue that the metadata is critical where, as here, a fraud claim is at issue.

Plaintiffs' contention that production of ESI in the form of searchable PDF files would destroy the associated metadata appears unfounded. While the PDF files would not necessarily contain the metadata, Centro represents that the metadata would remain intact and plaintiffs have not shown to the contrary.

The court also finds that plaintiffs have not, at this point, demonstrated an adequate need to have all the ESI produced in native format. *See In re Jemsek Clinic, P.A.*, Nos. 06–317662013 WL 3994663, at *9 (Bankr. W.D.N.C. 2 Aug. 2013) (denying motion to produce all metadata for over 200,000 pages of documents in part due to the lack of proportionality between the need and the burden). Instead, as Centro argues, production in the form of searchable PDF's is sufficient. If after reviewing Centro's production plaintiffs determine that they still seek production of particular ESI in native format, they may file an appropriate motion. *See* Rule 26(b)(2)(B).

All production made by Centro pursuant to this Order shall be accompanied by a supplemental response to plaintiffs' production requests indicating the documents produced. The supplemental response shall be signed in accordance with Rule 26(g)(1).

**IV.	Privilege Log**

Plaintiffs accurately assert that Centro has not provided a privilege log for documents or portions of documents withheld on the basis of privilege. Conceding the failure, Centro attempts to justify it by pointing to purported failure of the other parties to produce privilege logs. This is obviously not a legitimate excuse.

Centro and the other parties are reminded that not only is a privilege log required by Rule

---

(Pls.' Proposed ESI Protocol ¶ B.2.d; Defs.' Proposed ESI Protocol ¶ B.2.d).

26(b)(5)(A), but they all agreed to provide them, and the court has ordered that they do so. Specifically, the parties' Discovery Plan states:

> The Parties have agreed to log materials withheld from discovery on the grounds that they are protected by the attorney-client privilege, protected by the work product doctrine, or protected as material prepared in anticipation of litigation or for trial. The following shall be exempt from the log requirement:
>
> i. correspondence between outside or in-house counsel and clients after the litigation was filed;
> ii. memoranda, drafts, notes and files of outside litigation counsel; and
> iii. correspondence between outside counsel and clients prepared in anticipation of litigation.
>
> The privilege log shall otherwise comply with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A).

(Discovery Plan 3 ¶ 3.d). The Scheduling Order "APPROVED AND ORDERED" the Discovery Plan, including this stipulation on privilege logs. (Sched. Order 1). The parties reiterated their obligation to provide a privilege log in their proposed ESI protocols: "A producing party withholding ESI items, however, must comply with any obligations to provide information about such items to the receiving party under the Federal Rules of Civil Procedure, including the obligation to provide a privilege log for ESI items withheld on the basis of privilege." (Pls.' Proposed ESI Protocol ¶ B.3.f(i); Defs.' Proposed ESI Protocol ¶ B.3.f(i)). Accordingly, by 16 October 2013, Centro shall serve on plaintiffs a privilege log meeting the requirements of Rule 26(b)(5)(A) and duly signed by counsel for any otherwise responsive documents withheld on the grounds of privilege

**V.     Expenses**

Plaintiffs have requested an award of expenses. The court finds that an award of expenses is not warranted to either party because the circumstances would make an award of expenses

12

unjust. *See* Fed. R. Civ. P. 37(a)(5)(C).  The court therefore declines to award any expenses incurred in connection with the motion.

## **CONCLUSION**

For the foregoing reasons, the motion to compel (D.E. 38) is ALLOWED IN PART and DENIED IN PART on the terms set forth above.  Each party shall bear its own costs incurred on the motion.

SO ORDERED, this 26th day of September 2013.

_____
James E. Gates
United States Magistrate Judge